United States District Court
Southern District of Texas
**ENTERED**
October 23, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RANDALL BOLIVAR, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:18-cv-139 |
| | § | |
| LORIE DAVIS, | § | |
| Respondent. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On August 24, 2018, Petitioner Randall Bolivar filed a petition for writ of habeas corpus by a person in state custody, pursuant to 28 U.S.C. § 2254. Dkt. No. 1.  On August 14, 2019 — after the appointment of counsel — Bolivar filed an amended petition. Dkt. No. 108.

On September 12, 2019, Respondent Lorie Davis, in her official capacity as Director of the Correctional Institutions Division ("the State") filed a motion for summary judgment. Dkt. No. 114.

After reviewing the record and the relevant caselaw, it is recommended that the motion for summary judgment be granted and the petition for writ of habeas corpus be denied.  The state court acted reasonably when it denied Bolivar's claims to relief.

## I. Background

### A. Factual Background

On direct appeal, the Thirteenth District Court of Appeals of Texas made specific factual findings. Bolivar v. State, No. 13-14-00157-CR, 2016 WL 4939384 (Tex. App. Sept. 15, 2016).  As provided by law, the court sets forth and adopts those findings.[1]  Thus,

---

[1] Any factual findings made by the state court are "presumed to be correct," unless the petitioner can show "by clear and convincing evidence" that they were incorrect. Norris v. Davis, 826 F.3d 821, 827 (5th Cir. 2016), cert. denied, 137 S. Ct. 1203, 197 L. Ed. 2d 250 (2017) (citing 28 U.S.C. § 2254(e)(1)).  Bolivar has raised no such challenge. Indeed, Bolivar has not challenged any specific factual findings as found by the state court.  Accordingly, the Court adopts the factual findings of the state court.

all of the facts, unless otherwise indicated, are quoted from the state Court of Appeals decision, changing only the formatting.

Bolivar was charged by indictment with the murder of Aaron Castillo. On February 2, 2009, Bolivar and one of the co-defendants charged in the case, Rolando Garza, ran into Aaron Castillo and his brother, Agustin Castillo, at a local business. Bolivar confronted Agustin regarding some money owed for marijuana Bolivar had sold to him. The confrontation was futile and resulted in a vehicle chase. According to the testimony of both Garza and the other charged co-defendant, Rudy Bolivar (Bolivar's brother), Bolivar called Rudy, asked him to pick up a gun, and bring it to where they were. At one point during the chase, Bolivar parked his vehicle blocking the roadway. Aaron, who was driving the vehicle the Castillos were in, rammed Bolivar's vehicle and spun it around. Aaron then drove to his mother's home, where Agustin jumped out of the vehicle and ran inside the house. Bolivar parked down the street, and according to testimony from Garza, approached Aaron's vehicle. Garza testified that Aaron exited his vehicle with his hands raised and Bolivar shot Aaron three times, at least two of the shots in his back, killing him.[2]

Agustin also testified during trial. He said he owed Bolivar money for five pounds of marijuana. He agreed that Aaron had rammed Bolivar's vehicle when it was blocking the road and they drove to their mother's house. Agustin stated he got out of the vehicle and ran inside to get a knife and a telephone. Agustin stated he needed a weapon because he saw Bolivar with a gun. Agustin testified that he saw Bolivar shoot Aaron. However, in his statement to police, Agustin stated he only heard the gunshots. Agustin also testified that Aaron had a crowbar in his vehicle, which was found near his body.

Additionally, Rudy Bolivar testified against his brother. Rudy stated that Bolivar had called him asking for a black duffle bag. When Rudy retrieved the bag, he looked

---

[2] Garza also testified that his testimony was subject to a plea agreement between himself and the State, and in exchange for his testimony, he was allowed to plead guilty to a lesser offense of aggravated assault, and the murder charge against him was dismissed. See Tex. Penal Code Ann. § 22.02 (West, Westlaw through 2015 R.S.); id. § 19.02.

inside and it had one handgun. Rudy met his brother at a local store, and witnessed Aaron ram Bolivar's vehicle.[3]

The State also elicited testimony from Eric Herrera, who was driving Bolivar at the time of his arrest. Herrera testified that Bolivar had told him that he had shot Aaron with a small caliber machine gun for money because Agustin owed Bolivar five hundred dollars. Herrera knew both Bolivar and Aaron and said Bolivar never had any issues with Aaron.

Bolivar also gave a statement to Brownsville Police Department shortly after his arrest, which was admitted into evidence. In that statement, Bolivar states that another person shot Aaron, but that he was there when it happened.[4]

In that statement, Bolivar implied — but never directly stated — that a man nicknamed "Checo" was the shooter. Dkt. No. 59-6, p. 3654.  Bolivar declined to identify Checo's real name. Id, p. 3640.  Bolivar did admit to the police in his statement that he told Checo where the Castillos were; followed the Castillos at Checo's behest; and led Checo to the location where the murder occurred. Id., pp. 3639-3654.

Bolivar did not testify at trial.  The jury was instructed that they could find Bolivar guilty if they found that Bolivar shot Aaron Castillo or if he was "criminally responsible" for someone else shooting Aaron Castillo. Dkt. No. 59-4, p. 1381.

On January 8, 2014, the jury found Bolivar guilty of murder. Dkt. No. 59-4, p. 1385. On January 9, 2014, the jury assessed Bolivar 45 years of incarceration as his punishment. Id., p. 1396.  On that same day, the Court sentenced Bolivar to 45 years of imprisonment. Id., p. 1399.

### B. Motion for New Trial

On February 3, 2014, Bolivar — through his appointed trial counsel — timely filed a motion for a new trial. Dkt. No. 59-4, pp. 1404-1413.  While the record does not contain

---

[3] Rudy also testified that he was required to testify as part of a plea agreement with the State. Due to his testimony, Rudy's murder charged was dismissed and he pleaded guilty to a subsequent indictment for unlawful use of a criminal instrument. See id. § 16.01 (West, Westlaw through 2015 R.S.).

[4] The direct quotation of facts, taken from the Thirteenth District Court of Appeals, ends here.

such a filing, Bolivar claims that he also filed a <u>pro se</u> motion for a new trial on that same day. <u>Bolivar</u>, 2016 WL 4939384, at *18.

It appears that the trial judge chose to ignore Bolivar's <u>pro se</u> motion for a new trial and ruled solely upon the motion filed by appointed counsel. <u>See</u> Dkt. No. 59-4, p. 1418 (trial court denying motion for new trial filed by appointed counsel).  The order denying the motion for new trial was issued on February 7, 2014. <u>Id</u>.  The trial court did not hold an evidentiary hearing on the motion for new trial. <u>Id</u>.

On February 25, 2014, Bolivar's trial counsel filed a motion to withdraw. Dkt. No. 59-4, p. 1432.  On February 28, 2014, the Court granted the motion. <u>Id</u>., at 1434.

### C. Direct Appeal

On February 11, 2014, the trial court appointed appellate counsel for Bolivar on direct appeal. Dkt. No. 59-4. p. 1426.  On March 11, 2015, Bolivar filed a motion requesting that he be permitted to proceed <u>pro se</u> on appeal. Dkt. No. 59-19, p. 4453.  On June 5, 2015, the Thirteenth District Court of Appeals granted the motion to proceed <u>pro se</u>. <u>Id</u>., pp. 4452-54.

On direct appeal, Bolivar, acting <u>pro se</u>, raised sixteen issues: "(1) the initial trial court judge was constitutionally disqualified to render judgment; (2) the court of appeals previously abused its discretion; (3) he was denied counsel at critical stages of trial; (4) his initial trial counsel was ineffective; (5) the State committed Brady violations; (6) the trial court committed error by allowing Bolivar's statement into evidence; (7) there was insufficient evidence to support the conviction; (8) he was denied counsel during the time period to file a motion for new trial; (9) he was denied an evidentiary hearing on his <u>pro se</u> motion for new trial; (10) the State violated his Confrontation Clause rights; (11) he was denied the right to testify on his own behalf; (12) the State knowingly used false or misleading testimony; (13) the court reporter failed to record all bench conferences; (14) the law of parties instruction in the jury charge was error; (15) the trial court erred by not giving an accomplice witness instruction <u>sua sponte</u>, and (16) the trial judge was constitutionally disqualified from rendering the judgment." <u>Bolivar v. State</u>, No. 13-14-00157-CR, 2016 WL 4939384, at *1 (Tex. App. 2016).

On September 15, 2016, the Thirteenth District Court of Appeals issued an opinion, affirming Bolivar's conviction. Id.  The appellate court specifically rejected each and every claim for relief. Id.

On February 15, 2017, the Texas Court of Criminal Appeals refused Bolivar's petition for discretionary review. Dkt. No. 60-3, p. 4921. [5]

On June 5, 2017, the Supreme Court of the United States denied Bolivar's petition for writ of certiorari. Dkt. No. 60-4, p. 4941.

### D. State Habeas Proceedings

On July 31, 2017, Bolivar, acting pro se, filed an application for a writ of habeas corpus in the Court of Criminal Appeals of Texas. Dkt. No. 60-5, p. 4946.  In his petition, Bolivar raised a single issue, namely that the senior judge who presided over his trial and issued the judgment of conviction lacked jurisdiction to try the case because he did not take an oath of office prior to the trial commencing. Id. at 4951-52.

On September 20, 2017, the application was dismissed without a written order. Dkt. No. 60-5, p. 5307.  The dismissal indicated that the Court of Criminal Appeals rejected the petition on procedural grounds, rather than on substantive grounds. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (indicating that a "denial" signifies adjudication on the merits, while "dismissal" reflects a claim declined on grounds other than upon the merits).

On August 24, 2017 — while the first application was pending — Bolivar filed a second application for writ of habeas corpus in the Court of Criminal Appeals of Texas. Dkt. No. 60-6, p. 5387.  In the second petition, Bolivar asserted the following claims: (1) the senior judge who presided over his trial and issued the judgment of conviction lacked jurisdiction to try the case because he did not take an oath of office prior to the trial commencing; (2) the original trial judge — who later recused himself — had an "antagonistic relationship" with Bolivar and his bias permeated the case; (3) Bolivar was denied assistance of counsel at critical pre-trial stages; (4) Bolivar was denied his

---

[5] The page citations refers to the Bates-stamped number on the bottom right of the page of the identified docket number.

constitutional right to confront witnesses against him; (5) the State withheld exculpatory evidence; (6) Bolivar's conviction was barred by "collateral estoppel," violating his constitutional right to be free of double jeopardy; (7) Bolivar's original appointed attorney — who did not represent Bolivar at trial — had a conflict of interest; (8) Bolivar was denied the right to counsel when he was seeking a motion for a new trial; (9) Bolivar's counsel kept him from testifying at trial, even though Bolivar told her that he wanted to testify; (10) the State violated his rights when it knowingly used perjured testimony to convict him; (11) the police continued to question him even after Bolivar invoked his right to counsel, rendering his statements inadmissible; (12) the trial court issued incorrect jury instructions; (13) the trial court did not hold an evidentiary hearing on his motion for a new trial and did not provide him with a complete and accurate record for his direct appeal; and (14) that he received ineffective assistance of counsel at trial. Dkt. No. 60-6, pp. 5387-5422.

On March 28, 2018, the Court of Criminal Appeals of Texas "denied" the second application "without [a] written order." Dkt. No. 60-19, p. 6215.  The "denial" signified that the application was resolved on substantive grounds. Torres, 943 S.W.2d at 472 (Tex. Crim. App. 1997).

### E. Federal Habeas Petition

On August 24, 2018, Bolivar filed a petition for writ of habeas corpus in this Court. Dkt. No. 1.  In his petition, Bolivar raised the same fourteen claims that he raised in his second application in state court. Id.

On December 21, 2018, the State timely filed a motion for summary judgment, arguing that Bolivar's claims were not supported by the record. Dkt. No. 61.

On March 11, 2019, Bolivar filed a motion for the appointment of counsel. Dkt. No. 74.  On March 12, 2019, the Court granted the motion and appointed Seth Kretzer to represent Bolivar. Dkt. No. 75.

On August 14, 2019, Bolivar — through his appointed counsel — filed an amended petition for writ of habeas corpus. Dkt. No. 108.  This petition is the operative one in this case.

In the amended petition, Bolivar argued that: (1) Bolivar's counsel denied him his constitutional right to testify on his own behalf when she refused to call him as a witness, despite his express instructions that he wished to testify; (2) the senior judge who presided over the trial did not take an oath prior to trial, disqualifying him from rendering judgment; (3) that when Bolivar filed a motion for a new trial, he was denied counsel, an evidentiary hearing, and a complete and timely reporter's record of the trial; (4) Bolivar was denied his right to counsel at the time of his arrest; and, (5) the trial court issued incorrect jury instructions. Dkt. No. 108.

On August 16, 2019, the Court dismissed the State's then-pending motion for summary judgment as moot, based upon the filing of the amended petition. Dkt. No. 109. The Court ordered the State to file a response to the amended petition no later than September 16, 2019 and noted that the State could re-urge any arguments from the original motion for summary judgment in its response. Id.

On September 12, 2019, the State filed a motion for summary judgment. Dkt. No. 114. In its motion, the State conceded that Bolivar's petition was timely filed and that all of his claims were exhausted. Id., pp. 5-6. As to his claims, the State argued that the first claim should be denied because Bolivar did not "affirmatively prove his counsel's actions prejudiced his trial." Id., p. 14. As to his second claim, the State argued that his claim arises solely under state law and is not cognizable on federal habeas review. Id. Regarding his third claim, the State asserted that Bolivar was not denied counsel when he sought a new trial and that the issues regarding the evidentiary hearing and reporter's record are state law claims which are not cognizable on federal habeas review. Id. As to his fourth claim, the State argues that Bolivar was not denied counsel. Id. As to the fifth, and last, issue, the State argues that the jury instruction was correct and that, even if it was incorrect, its inclusion did not rise to the level of a constitutional violation. Id.

Bolivar did not file a reply to the State's motion for summary judgment.

## II. Applicable Law

### A. Summary Judgment

Summary judgment pursuant to Rule 56(c) is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

All inferences are made and doubts are resolved in favor of the nonmoving party. Dean v. City of Shreveport, 438 F.3d 448, 454 (5th Cir. 2006).  Despite those inferences, hearsay is not competent summary judgment evidence.  Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987).

Summary judgment is an appropriate vehicle through which to resolve a habeas petition – including challenges based upon procedural grounds – where the facts otherwise support such resolution. Goodrum v. Quarterman, 547 F.3d 249, 255 (5th Cir. 2008); O'Veal v. Davis, 664 F. App'x 355, 356 (5th Cir. 2016).

### B. Section 2254

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner convicted in a state court may challenge his conviction to the extent it violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, only violations of the United States Constitution or federal law are subject to review by this Court under § 2254.

In conducting such a review, a federal district court:

> may not issue a <u>writ of habeas corpus</u> for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

<u>Riddle v. Cockrell</u>, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law'; or (2) 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and reaches an opposite result.'" <u>Simmons v. Epps</u>, 654 F.3d 526, 534 (5th Cir. 2011) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000)).

"The state court makes an unreasonable application of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts'; or (2) 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" <u>Simmons</u>, at 534 (quoting <u>Williams</u>, at 407).

Additionally, the AEDPA requires that federal law be "clearly established" "as articulated by the Supreme Court." <u>Woodfox v. Cain</u>, 609 F.3d 774, 800 n. 14 (5th Cir. 2010). "[A] decision by . . . [the Fifth Circuit] . . . or one of our sister circuits, even if compelling and well-reasoned, cannot satisfy the clearly established federal law requirement under § 2254(d)(1)." <u>Salazar v. Dretke</u>, 419 F.3d 384, 399 (5th Cir. 2005).

Furthermore, a federal court lacks the authority to review a state court's determination of state law issues. <u>See</u> <u>Charles v. Thaler</u>, 629 F.3d 494, 500–01 (5th Cir. 2011) ("Under § 2254, federal <u>habeas</u> courts sit to review state court misapplications of <u>federal</u> law. A federal court lacks authority to rule that a state court incorrectly interpreted

its own law.") (emphasis original).  The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  Indeed, the Fifth Circuit has observed, "[i]t is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law." Schaetzle v. Cockrell, 343 F.3d 440, 449 (5th Cir. 2003) (quoting Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995)).

### C. Ineffective Assistance

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was objectively unreasonable, rendering it deficient; and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 689-94 (1984).  To merit relief, the petitioner must meet both prongs. Id.  In contrast, "a court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

To satisfy the first prong, the petitioner must establish that counsel's performance was deficient.  "[T]he proper measure of attorney performance is reasonableness under prevailing professional norms." U.S. v. Molina-Uribe, 429 F.3d 514, 519 (5th Cir. 2005). Courts will not "audit decisions that are within the bounds of professional prudence." Id. at 518.  To warrant relief, because of ineffective assistance of counsel, counsel's performance must be so deficient that it "renders the result of the . . . proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Even if counsel's performance was deficient, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693 (internal citation omitted).  A petitioner must establish that the error prejudiced the outcome of his trial.  A petitioner establishes prejudice where he proves "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. To merit relief, the petitioner must show an error that undermines confidence in the reliability of the verdict. Id. At the same time, "any amount of actual jail time has Sixth Amendment significance." Tutt v. Cockrell, 273 F.3d 1107 (5th Cir. 2001).

Furthermore, establishing that "a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Harrington v. Richter, 562 U.S. 86, 105 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (emphasis added). Thus, the question is whether the state court was unreasonable in its resolution of the issue presented, not whether the state court may have been wrong.

"[R]eview of the state court's resolution of . . . [an] ineffective-assistance-of-counsel claim is doubly deferential . . .since the question is whether the state court's application of the Strickland standard was unreasonable." Druery v. Thaler, 647 F.3d 535, 539 (5th Cir. 2011) (internal quotations and citations omitted). Thus, in order to succeed on a § 2254 habeas claim, based upon ineffective assistance of counsel, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.

## III. Analysis

The Court begins by noting that, in the § 2254 context, it must determine whether the last state court decision unreasonably applied Supreme Court precedent or was based on an unreasonable application of the facts. 28 U.S.C. § 2254(d). In this case, the last state court decision was the Court of Criminal Appeals decision denying Bolivar's second application, which merely noted that the application was "denied without written order." Dkt. No. 60-19, p. 6215. Obviously, this order does not permit the Court to directly ascertain how the Court of Criminal Appeals applied the law or resolved factual disputes.

In such circumstances, the Supreme Court has said that a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, — U.S. —, 138 S. Ct. 1188, 1192 (2018). In this case, the last state court decision which provided a relevant rationale was Bolivar's direct appeal. Bolivar v. State, No. 13-14-00157-CR, 2016 WL 4939384, at *16 (Tex. App. Sept. 15, 2016). Accordingly, the Court will presume that the Court of Criminal Appeals adopted the same reasoning as the Thirteenth Court of Appeals.

Bolivar raised five issues in his amended petition: (1) he was denied his constitutional right to testify on his own behalf when trial counsel refused to call him as a witness, despite his express instructions that he wished to testify; (2) the trial court lacked jurisdiction because the senior judge who presided over the trial did not take an oath prior to trial; (3) when Bolivar filed a motion for a new trial, he was denied counsel and an evidentiary hearing, as well as a complete and timely reporter's record of the trial; (4) he was denied his right to counsel at a critical stage in the proceedings; and, (5) the trial court issued incorrect jury instructions. Dkt. No. 108. The Court will address each of these in turn.

### A. Ineffective Assistance

Bolivar asserts that his trial counsel, Rebecca RuBane, prevented him from testifying at trial on his own behalf, even though Bolivar informed her that he wished to testify. Bolivar's claim does not overcome the "doubly deferential" review that both RuBane and the state courts are entitled to. Druery, 647 F.3d at 539. Bolivar has also sought an evidentiary hearing on this issue; as discussed further below, he does not meet the statutory standard for such a hearing.

"Where the defendant contends that his counsel interfered with his right to testify, the appropriate vehicle for such claims is a claim of ineffective assistance of counsel." U.S. v. Mullins, 315 F.3d 449, 452 (5th Cir. 2002) (cleaned up)[6] (quoting Sayre v. Anderson,

---

[6] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals,

238 F.3d 631, 634 (5th Cir. 2001)).  Accordingly, Bolivar has to establish both deficient performance and prejudice.

"It is deficient performance as a matter of law for defense counsel to override the ultimate decision of a defendant to testify contrary to his advice." Johnson v. Cain, 712 F.3d 227, 232 (5th Cir. 2013) (internal quotation marks omitted) (quoting Mullins, 315 F.3d at 452-53).  Nevertheless, "when the record is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed, defendant acquiesced in his lawyer's advice, and therefore the only inquiry is whether that advice was sound trial strategy." Mullins, 315 F.3d at 453–54.

The state court, when deciding this claim, held that there was no evidence presented to support Bolivar's claim and that it was "unable to determine if Bolivar's rights were violated." Bolivar, 2016 WL 4939384, at *16.  This Court's review of that decision "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  Thus, the Court can only consider the evidence that was before the state courts.

The record before the Texas courts was silent on Bolivar's lack of testimony.  As Bolivar argued in the state courts, the trial record was "devoid of any plain, free, and intelligent waiver" of his right to testify. Bolivar, 2016 WL 4939384, at *16.  That argument is different than claiming that he instructed his counsel that he was choosing to testify, but counsel prevented him from doing so.

In other words, Bolivar did not claim that RuBane prohibited him from testifying, but rather argued that the record did not expressly show that he intelligently waived his right to testify. Dkt. No. 59-20, pp. 4518-20.  As the Courts have recognized, albeit in other contexts, "the absence of evidence does not equal evidence of absence." Johnson v. PPI Tech. Servs., L.P., 613 F. App'x 309, 312 (5th Cir. 2015) (collecting cases).  The fact that

---

internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3 (Md. Ct. Spec. App. Dec. 1, 2017); see also Flores-Abarca v. Barr, 937 F.3d 473, 479-81 (5th Cir. 2019) (using "cleaned up").

the record was silent about Bolivar's lack of testimony is not conclusive — or even implicit — proof that he was denied his constitutional right to testify.  The record was similarly devoid of any evidence that Bolivar wished to testify, but was prevented by RuBane from doing so.  Id.  In light of this absence of evidence, the state court made the factual finding that Bolivar had not established sufficient facts to demonstrate that his rights were violated.

The Court must presume that the state court's factual findings were correct. 28 U.S.C. § 2254(e)(1).  Bolivar can only overcome that presumption by "clear and convincing evidence" that the factual determination was incorrect. Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  He has failed to meet that demanding standard.  Considering the presumption that the factual findings were correct and reviewing the factual record before the state court, this Court concludes that the state court's factual findings were not unreasonable. § 2254(d)(2).  In sum, the record was devoid of any indication that Bolivar was prevented from testifying or that RuBane's advice to him, regarding testifying, fell outside of the limits of acceptable trial strategy.

### 1. Evidentiary Hearing

Bolivar has requested that this Court hold an evidentiary hearing on this issue.  As set out below, Bolivar has failed to meet the statutory standard for such an evidentiary hearing.

Federal law provides that, if a state habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

    (A)   The claim relies on—

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

This statute "applies only to prisoners who have failed to develop the factual basis of a claim in State court proceedings." Williams v. Taylor, 529 U.S. 420, 430 (2000) (internal quotation marks omitted). Thus, the Court must first ascertain whether Bolivar failed to develop the factual record.

There must be a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in order for the Court to find that there was a failure to develop the factual basis in state court. Williams, 529 U.S. at 432. Bolivar represented himself pro se on direct appeal. Dkt. No. 59-19, pp. 4444-51. Bolivar did not seek an evidentiary hearing on whether he was denied his right to testify. Dkt. No. 59-20, pp. 4518-20. Instead, he argued that because the record was silent on whether he waived his right to testify, his rights were "flagrantly violated." Id., at 4520. Thus, Bolivar never developed the record. Instead, he rested on the record as it existed at that time

For § 2254(e)(2) purposes, a prisoner has failed to develop the record when he failed to make "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Jones v. Davis, 890 F.3d 559, 566 (5th Cir. 2018). "When the evidence the applicant seeks to present before a federal tribunal could have been easily obtained and introduced to the state court, the due diligence requirement is not satisfied." Id.

Bolivar could have sought evidentiary hearings in state court to present evidence concerning whether his decision not to testify was truly voluntary, but failed to do so.[7]

---

[7] The Court notes that the State has been harmed by this failure. At this date, an evidentiary hearing would be unlikely to resolve whether RuBane overrode Bolivar's decision to testify or whether Bolivar acquiesced to RuBane's advice that he decline to testify. Only two people — RuBane and Bolivar — were party to those conversations and RuBane passed away during the pendency of this habeas proceeding. By waiting until now to seek to develop this claim, Bolivar's dilatory request has robbed the State of the only witness that could potentially refute his claims.

Accordingly, Bolivar did not develop the factual record in state court and § 2254(e)(2) applies in this case.  As Courts have noted, in other contexts, a pro se litigant's failures are attributable solely to them. Sandres v. Louisiana Div. of Admin., 551 F. App'x 95, 99 (5th Cir. 2013); Doe v. Am. Airlines, 283 F. App'x 289, 292 (5th Cir. 2008).

Because § 2254(e)(2) applies in this case, Bolivar must demonstrate that his claim either relies on (1) a new rule of constitutional law that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence. § 2254(e)(2).  Bolivar has not met either standard.

Bolivar is not relying on a new rule of constitutional law.  The case law regarding a defendant's right to testify has been well-established for many years. Faretta v. California, 422 U.S. 806, 819, n. 15 (1975); Rock v. Arkansas, 483 U.S. 44, 51 (1987).

Furthermore, Bolivar's claim is not based on a factual predicate that could not have been previously been discovered through the exercise of due diligence.  As noted earlier, Bolivar could have sought an evidentiary hearing on this issue or sought an affidavit from RuBane.  Presenting such an affidavit to the state courts would have been "within the exercise of due diligence." Roberts v. Dretke, 356 F.3d 632, 641 (5th Cir.), opinion after grant of appeal, 381 F.3d 491 (5th Cir. 2004).  Thus, Bolivar has failed to meet the standard for an evidentiary hearing in this Court.

Accordingly, Bolivar has not established that the state courts were unreasonable in deciding that his constitutional rights were not violated when he did not testify on his own behalf.

**B. Jurisdiction**

Bolivar asserts that the retired judge who presided over his trial did not take the required oath of office, rendering the state court without jurisdiction to issue judgment. This claim is not cognizable on federal habeas review.

The Texas Constitution requires all "elected and appointed officers," to take a constitutional oath of office "before they enter upon the duties of their offices." Tex. Const. art. XVI, § 1.  Texas law further requires that "a retired or former judge shall, before accepting an assignment as a visiting judge of a statutory county court, take the oath of

office required by the constitution and file the oath with the regional presiding judge." Tex. Gov't Code Ann. § 25.0017(a).  The law does not "does not specify that visiting judges must renew their oath before every assignment" in a court. In re Baumgart, No. 14-17-00934-CR, 2018 WL 830764, at *1 (Tex. App. Feb. 13, 2018).

Judge Robert Pate was the visiting judge who presided over Bolivar's trial.  Bolivar has argued that there is no evidence that Pate took the oath of office prior to presiding over the trial.  Bolivar has pointed to the fact that he has sought a copy of the oath taken prior to trial and the State has never produced one.  In other words, Bolivar's argument is that because no timely oath has been found, none exists.  Of course, as observed earlier, the absence of evidence is not evidence of such an absence. Johnson, 613 F. App'x at 312. The Court notes that the record includes an oath, signed by Judge Pate, but that oath is dated October 1, 2014, after Bolivar's trial had already concluded. Dkt. No. 60-7, p. 5464.

Nevertheless, the Court begins by noting that the "absence of jurisdiction in the convicting court is ... a basis for federal habeas corpus relief cognizable under the due process clause." Evans v. Cain, 577 F.3d 620, 624 (5th Cir. 2009) (ellipses original) (citing Lowery v. Estelle, 696 F.2d 333, 337 (5th Cir. 1983)).  Accordingly, the question before the Court is whether the absence of a timely-taken oath is a basis for this Court to hold that the state trial court lacked jurisdiction to try Bolivar.  This question, however, has been foreclosed for this Court's review.

When the highest court of the state holds that the trial court had jurisdiction, then the question of whether jurisdiction existed "is a question foreclosed to a federal habeas court." Evans, 577 F.3d at 624 (citing Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984)).  "An issue may be squarely presented to and decided by the state's highest court when the petitioner presents the argument in his application for postconviction relief and the state's highest court denies that application without written order." Evans, 577 F.3d at 624.  In other words, if the state habeas application raises the issue of jurisdiction and the state's highest court denies the petition on the merits, it can be fairly concluded that the state's highest court held that jurisdiction existed.

In his second state habeas application, Bolivar raised the issue of whether the trial court had jurisdiction, based upon Judge Pate's purported lack of the required oath. Dkt. No. 60-6, pp. 5387-5422.  On March 28, 2018, the Court of Criminal Appeals of Texas "denied" the second application "without [a] written order." Dkt. No. 60-19, p. 6215.  The denial signified that the application was resolved on substantive grounds. Torres, 943 S.W.2d at 472.  By obvious implication, when confronted with the exact allegation set forth here, the state's highest court held that the trial court had jurisdiction over the case.  Accordingly, the question of jurisdiction has been foreclosed in this Court.  As such, this claim is not cognizable in this Court and should be denied. Evans, 577 F.3d at 624.

### C. Motion for New Trial

Bolivar asserts that when he filed a motion for a new trial, he was denied counsel and an evidentiary hearing, as well as a complete and timely reporter's record of the trial.  The first issue — denial of counsel — is belied by the record.  The second and third issues — the lack of an evidentiary hearing and the lack of a reporter's record — are state law issues that are not cognizable in these proceedings.

#### 1. Counsel

Bolivar argues that he was denied counsel during the time period when he was permitted to file a motion for a new trial.  For the reasons stated below, the state court was not unreasonable in its determination that Bolivar's rights were not violated.

A defendant can file a motion for new trial within 30 days after sentence is imposed. Tex. R. App. P. 21.4(a).  Texas courts "have held the period for filing a motion for new trial is a critical stage at which a defendant is entitled to counsel." Rogers v. State, 305 S.W.3d 164, 170 (Tex. App. 2009).  "Courts may presume that a defendant has suffered unconstitutional prejudice if he is denied counsel at a critical stage of his trial." Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1375–76 (2015) (cleaned up).

On February 3, 2014, Bolivar — through appointed counsel — timely filed a motion for a new trial. Dkt. No. 59-4, pp. 1404-1413.  While not contained in the state court records, Bolivar apparently also filed a pro se motion for a new trial on that same day. Bolivar, 2016 WL 4939384, at *18.  Under Texas law, "a trial court is free to disregard any

pro se motions presented by a defendant who is represented by counsel." Robinson v. State, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). It appears that the trial judge chose to ignore Bolivar's pro se motion for a new trial and ruled solely on the motion filed by appointed counsel. See Dkt. No. 59-4, p. 1418 (trial court denying motion for new trial filed by appointed counsel). The order denying the motion for new trial was issued on February 7, 2014. Id.

On February 25, 2014, Bolivar's trial counsel filed a motion to withdraw. Dkt. No. 59-4, p. 1432. On February 28, 2014, the Court granted the motion. Id., at 1434. Thus, Bolivar was represented by counsel when the motion for new trial was filed and ruled upon.

The state court found that, based on counsel filing the motion for new trial, Bolivar was not denied counsel during this time period. See Bolivar, 2016 WL 4939384, at *18 ("At no time during the critical time to file a motion for new trial was Bolivar not represented by counsel."). This factual finding was reasonable, given that counsel timely filed a motion for new trial and served as Bolivar's counsel when the motion was ruled upon. Indeed, this factual finding was correct. Accordingly, this claim is meritless and should be denied.

### 2. Evidentiary Hearing & Record

Bolivar asserts that when he filed a motion for a new trial, he was denied an evidentiary hearing as well as a complete and timely reporter's record of the trial. These claims are not cognizable on federal habeas review.

As to the evidentiary hearing; when a defendant files a motion for a new trial, the trial court has the discretion to order an evidentiary hearing. Hobbs v. State, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). "The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." Id.

As to the reporter's record, under Texas law, a defendant may be entitled to a new trial if the court reporter's record is incomplete; cannot be reconstructed; and the incomplete portion is necessary for the defendant's appeal. TEX. R. APP. P. 34.6(f). Bolivar has alleged that the court reporter failed to record some bench conferences; failed to record

off-the-record discussions; and failed to translate certain Spanish words. Dkt. No. 108, pp. 13-14; <u>Bolivar</u>, 2016 WL 4939384, at *19.

As to the translation, Bolivar did not argue that the lack of translation violated his constitutional rights, by making himself or the jury unable to understand the proceedings. Rather, Bolivar pointed out that there were seven instances in the record where Spanish words were not fully translated and those failures rendered the record so incomplete that he was entitled to a new trial under TEX. R. APP. P. 34.6(f).

The Texas appellate courts found that Bolivar did not make a contemporaneous objection at trial to the lack of recordings or translations, waiving the issue for appellate review. <u>Bolivar</u>, 2016 WL 4939384, at *20-21.  The appellate court made no findings as to whether the record was actually complete, given its finding that "Bolivar has failed to preserve his complaint for appeal." <u>Bolivar</u>, 2016 WL 4939384, at *19.  This finding precludes relief in this Court.

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Walker v. Martin</u>, 562 U.S. 307, 315 (2011) (cleaned up).  When a state court holds that a defendant failed to preserve an issue for appeal, that is an independent state law ground which precludes federal <u>habeas</u> review. <u>Rhoades v. Davis</u>, 852 F.3d 422, 430 n. 28 (5th Cir. 2017); <u>Sochor v. Fla.</u>, 504 U.S. 527, 534 (1992).  Even if the lack of a complete reporter's record raises an issue of constitutional magnitude, it was resolved on an independent state law ground — the lack of contemporaneous objection at trial — which this Court cannot review.  Thus, these claims are not cognizable on federal <u>habeas</u> review and should be denied.

### D. Lack of Counsel

Bolivar asserts that he was denied his right to counsel at a critical stage in the post-arrest proceedings.   Again, the state courts' determinations and conclusions were reasonable in concluding otherwise.

Under Texas law, within 48 hours after an arrest, a defendant must be brought before a magistrate for hearing. TEX. CODE CRIM. PROC. ART. 15.17.  This hearing — which is

known colloquially as an "Article 15.17 hearing" — requires the magistrate to inform the accused "of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial. The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel." Article 15.17(a).

The U.S. Supreme Court has held that the right to counsel attaches, for Sixth Amendment purposes, when a defendant appears for an Article 15.17 hearing. Rothgery v. Gillespie Cty., Tex., 554 U.S. 191, 213 (2008). "Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." Id. at 212. A failure to appoint counsel in a reasonable time is subject to a prejudice analysis. Id.

The state appellate court noted that "Bolivar was arraigned in an Article 15.17 hearing on February 7, 2009 and counsel was appointed to him on March 6, 2009." Bolivar, 2016 WL 4939384, at *21. The state court also noted that there was no indication in the record as to why the appointment was delayed for one month, but held that Bolivar was not prejudiced by this failure. Id. This conclusion was not unreasonable.

There is no indication in the record that Bolivar was subjected to further interrogation after his Article 15.17 hearing, or that his case was otherwise irreparably harmed by the delay in the appointment of counsel. See Rothgery, 554 U.S. at 217 (Roberts, C.J., concurring) ("certain pretrial events may so prejudice the outcome of the defendant's prosecution that, as a practical matter, the defendant must be represented at those events in order to enjoy genuinely effective assistance at trial.").

In the state court, Bolivar argued that he was prejudiced because he did not have counsel to conduct pretrial investigations during this period. Bolivar, 2016 WL 4939384, at *21. At no point has Bolivar demonstrated that there was potentially exculpatory evidence that could only be gathered during that period between February 7, 2009 (the date of the Article 15.17 hearing) and March 6, 2009 (the date that counsel was appointed).

Bolivar does not have a right to counsel simply to serve as a roving "preindictment private investigator." U.S. v. Gouveia, 467 U.S. 180, 191 (1984).  The state courts reasonably concluded that Bolivar's rights were not violated by the delay in the appointment of counsel.  This claim should be denied.

### E. Jury Instructions

Bolivar's final argument asserts that the trial court issued incorrect jury instructions. For the reason discussed below, this claim should also be denied.

While the State's primary theory at trial was that Bolivar shot Aaron Castillo, it also introduced a transcript of Bolivar's statement to the police. Dkt. No. 59-6, p. 3613.  In that statement, Bolivar denied shooting Castillo, but admitted that he was there and implied that a man named "Checo" was the shooter. Dkt. No. 59-6, p. 3654.  Bolivar declined to identify Checo's real name. Id, p. 3640.  Bolivar did admit to the police that he told Checo where the Castillos were; followed the Castillos at Checo's behest; and led Checo to the location where the murder occurred. Id., pp. 3639-3654.

Based on this testimony, the State sought a jury instruction that would alternatively hold Bolivar responsible for Aaron Castillo's murder based upon Bolivar's assistance given to Checo.  Stated differently, the jury was to be told that Bolivar was guilty of murder if either (1) Bolivar killed Castillo or (2) if Bolivar was criminally responsible for Checo's acts.

The trial court gave the following jury instruction — known as "the law of parties" — over the objections of Bolivar's counsel:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

> Each party to an offense may be charged with the commission of the offense.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Mere presence alone will not constitute one a party to an offense.

Dkt. No. 59-4, p. 1381.

The state appellate court held that the jury instruction was proper, based upon the introduction of Bolivar's statement to the police. Bolivar, 2016 WL 4939384, at *8.  This conclusion was clearly reasonable.

The Court first notes that, in the § 2254 context, "errors in jury instructions do not state a claim for relief unless the error resulted in prejudice of constitutional magnitude." Ramirez v. Dretke, 398 F.3d 691, 696 (5th Cir. 2005) (cleaned up).  "The burden of demonstrating that an erroneous jury instruction violates the petitioner's Due Process rights is greater than the showing required to establish plain error on direct appeal." Id. (cleaned up) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

As an initial matter, the state appellate court correctly concluded that the State was entitled to a jury instruction on the law of parties.  As a general rule, a jury may be instructed on multiple theories of guilt, so long as each theory is supported by the evidence. U.S. v. Skilling, 638 F.3d 480, 481 (5th Cir. 2011).  Bolivar's statement to the police was sufficient evidence for the State to seek an instruction that Bolivar could be found guilty if the jury believed he was criminally responsible for Checo's actions. See In re State ex rel. Weeks, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013) ("Regardless of whether it is pled in the charging instrument, liability [under the law of parties] is an available legal theory if it is supported by the evidence.").  Accordingly, the state courts reasonably concluded that the State was entitled to this jury instruction.

Furthermore, even if the State was not entitled to that jury instruction, it would not change the outcome in this Court.  When a jury is instructed on alternative theories of guilt and one of those theories is invalid, the inclusion of the erroneous instruction "is subject to harmless-error analysis so long as the error at issue does not categorically vitiate all the jury's findings." Skilling, 638 F.3d at 481 (cleaned up) (citing Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008)).  The Court may find that the error was harmless if it can "conclude beyond a reasonable doubt that the verdict would have been the same absent the alternative-theory

error." Skilling, 638 F.3d at 483–84; see also Paredes v. Thaler, 617 F.3d 315, 326 (5th Cir. 2010) (applying this harmless error test in § 2254 context).

The evidence overwhelmingly demonstrated that Bolivar shot Castillo. Both of Bolivar's co-defendants — one of which was his brother — identified Bolivar as the shooter. No witness mentioned Checo, except for Bolivar in his police statement. Indeed, there is no other evidence of a "Checo" at the murder scene. From these facts, the Court concludes beyond a reasonable doubt that the verdict would have been the same, even without the law of parties instruction.

Thus, the law of parties instruction was legally correct and if it was not legally correct, its inclusion was harmless error. The state courts reasonably overruled Bolivar's appeal as to this issue and his claim should be denied.

## IV. Recommendation

It is recommended that the motion for summary judgment filed by Respondent Lorie Davis be granted. Dkt. No. 114. It is further recommended that Randall Bolivar's petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 be denied.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2254 motion to the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). "Importantly, in determining this issue, we view the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Druery v. Thaler, 647 F.3d 535, 538 (5th Cir. 2011) (internal quotations omitted) (citing Barrientes v. Johnson, 221 F.3d 741,

772 (5th Cir.2000)).  The district court must rule upon a certificate of appealability when it "enters a final order adverse to the applicant." Rule 11, Rules Governing § 2254 Petitions.

After reviewing Bolivar's § 2254 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Bolivar's § 2254 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Accordingly, it is recommended that a COA should be denied.

### B.  Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made.  The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting those findings.  If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except upon grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on October 23, 2019

_____
Ronald G. Morgan
United States Magistrate Judge